Good morning. If it may please the court, my name is Brad Sandler. I represent the appellant, Mr. Parker, in this matter. And as the gentleman before me, I'd like to reserve two minutes at the end for rebuttal. Your Honors, the conduct of the court, the trial court in this case, of receiving 17 notes from a jury, of receiving of those 17 notes, four notes that tell the court they're deadlocked, and the analysis we get from the appellate court of how it viewed those notes, the deliberations of the jury, and the conduct of this jury, to me, are not persuasive of what was going on in the jury room during this case. We have a case where we have a jury who requests readbacks of all the pertinent testimony in this case, of all the major witnesses in this case. There's a frank discussion from the record over the witnesses, over what they can recall, what they cannot recall. And for that reason, they requested that information from the court. After going through the testimony, they return a note to the court and say, we're deadlocked. We can't reach a decision. The court at that point takes an appropriate measure and sends them a note, which tells them to go back and spend some more time deliberating. It's a complex case. There's a lot of information. Gather your thoughts. On that same day, later that day, the middle of the day, we could call it, the court receives another note. We're deadlocked. The court, again, I believe appropriately at that point, sends a directive to the jury and says, jury, this is a complex matter. There's a lot at stake. Please go back and continue your role as jurors and see if you can't reach a decision. Yet another third note is returned to the court later that afternoon with the jury essentially saying the same thing. We have had an honest, frank discussion of the facts, the circumstances of this case. We cannot reach a decision. We are hopelessly deadlocked. And the court asked them to retire for the evening to return the next day. Now, during the next day, the jury actually asked for an instruction regarding reasonable doubt, which is an indication to me that the jury was deliberating thoughtfully based on the notes, based on the request of this reasonable doubt instruction. And after all of this deliberation, and we can't quantify what is the correct or incorrect amount of deliberation, the jury tells the court in the long, troubling notes, we are deadlocked. But not only are we deadlocked, we are deadlocked 11 to 1. For conviction. For conviction. So now we have a trial court operating under the operating and armed with the knowledge of where that jury stands. And to conclude, the jury at that point hadn't made a significant attempt at arriving at their decision in this case, I think is inconsistent with the deliberations as presented by this jury to the court. 17 notes is an awful lot of notes. And I am not aware of a case where there's been more notes than that. But in any event, there are 17 notes going to this court. And the final note that makes it to Judge Malik in this case is a note that tells him we're 11 to 1 for conviction. We have one juror who now is being identified, maybe not by name, maybe not by line of sight, but is being identified, singled out, and presented to this judge as an individual who won't cooperate with the group. You mean one of the 12 that's pointed out? He doesn't know which one. That's correct, Your Honor. And in reading the appellate court's opinion and in reading the line of cases in this area, I don't think a decision can rest on whether or not the judge actually knows the identity of that individual juror. I think it's kind of clear that when we have 12 persons sitting in the room and now are brought into a courtroom for a five-page-more charge or an Allen-type of charge, for what it's worth, we all know who that individual is. The 11 of the 12. The judge doesn't? The judge doesn't. The 11 that all jurors know? That's correct, Your Honor. The judge doesn't exactly know the identity of that person. Doesn't know. Not exactly. He doesn't know. He doesn't know. Does that make a difference? I think it absolutely makes a difference. And the reason I believe that. It makes a difference that he doesn't know? I think it makes a difference. I think it makes no difference whether he knows who the individual juror is or who that individual is. I think you misspoke before. Yeah, if I did, I'd correct myself. It's of no import when we look at the Loewenfeld opinion, and that tells us that we need to look at the giving of a more-type instruction, an Allen-type instruction, in the context of all of the circumstances. In the context of the circumstances of this case, it was a coercive instruction. Although the judge doesn't know the actual identity of that one juror, the judge's behavior in instructing this jury with a five-page instruction, knowing that they're 11-to-1 for guilt, can only, I submit to the Court, logically and rationally be directed at this holdout juror. Well, perhaps. But we are here on AEDPA, on the federal view of a state habeas. So how do you reason that from the Supreme Court cases? Well, I... We're just dealing with the universe of Allen, Loewenfeld, Lorenzo, aren't we? And I believe that Loewenfeld is the directive case. There's obviously some Ninth Circuit opinions that have dealt with this issue. Alcaboye, Cechua, Sanders, those cases did. They don't count, do they? Sorry? They don't count. No, they don't. I would submit to the Court, because I believe the Attorney General's papers are all focused on there's no square Supreme Court case on point. I would submit there isn't. But that doesn't abrogate the Fifth or Fourteenth Amendment to the United States Constitution, nor Loewenfeld, which tells us how to interpret these cases based on the context, the totality of the circumstances, and the fact that this jury reacted from this instruction by convicting the next day tells us the effect of the Court's conduct and that this truly was a coercive jury instruction. It doesn't pass constitutional muster, and the relief being sought by Mr. Parker is appropriate and should be granted. Well, now, if you were going to write this decision and you were going to say what the State Appellate Court did is conflicts with the United States Supreme Court cases, what case would you cite and what language from that case would demonstrate that this was inconsistent with the Supreme Court decision? I would cite Loewenfeld, Your Honor. Would you? And what language in Loewenfeld would you cite? I would cite at page 31 of our amended opening brief, the Supreme Court explained that our view of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court in its context and also all the circumstances. What page are you reading from in Loewenfeld? At 237. Pardon? At 237, Your Honor. Rochelle Burton had a question. Oh, I forgot what it was. You have about a minute. Yes, Your Honor. May I reserve a moment? Certainly. Thank you. May I please the Court, David Baskind, for appellee? There are no Supreme Court cases that support petitioner's argument. Well, his argument is that Loewenfeld requires the facts and circumstances to be taken into consideration, and the California Court of Appeal did not take those into consideration. Well, certainly the Court of Appeal did take that into consideration. Loewenfeld held that the instruction was not coercive. So it's a little, you know, we're looking at some abstract sentence in the opinion and ignoring the actual holding. So it's hard to get from there to this idea that there's support for the fact that this instruction was coercive. As the district court said, and we agree, the controlling case is Allen v. United States. There, the Supreme Court made it very clear that a judge can instruct a deliberating jury to continue deliberating if they feel like they've deadlocked, and the judge can also tell the jurors to consider each other's point of view. Well, the judge sure did more than that. But let me ask you a broader question, just in this whole area of law. Do you think it makes a difference whether the trial judge knows the identity of the holdout juror, as opposed to just knowing that it's 11 to 1, there's one holdout juror? And do you think that makes a difference? I definitely think it makes a difference. Why? I think when a juror knows that the judge knows who he is, the judge is saying these things with that juror in mind. The juror himself or herself feels singled out, much more likely. If the juror does not think that the judge knows who he is, then the judge is just reading abstractly, is talking about the law. But if the juror knows that it has been communicated to the judge that there's only one holdout, I don't understand why that juror would not feel that the directions were being given toward him or her. Well, I mean, we could look at it another way, which is, what would happen if the judge just sent this instruction into the jury room, which seems to be Petitioner's claim that should have happened, I think. There you have 12 jurors sitting together, and they're reading this instruction, and you've got 11 jurors looking at the holdout saying, you, this is you. Whereas when this is done in court, there's, you know, they're sitting there, they're looking at the judge, nobody's looking at each other, the judge gives this, he doesn't know who the holdout juror is, he's not looking at a specific juror. He's telling them, and he's telling them both sides, you have to listen to each other. If you have one position, you have to listen to the other, try to convince the other side. All the cases that we have available all rely on that distinction. I mean, that is the case law out there. In real life, I don't think I've ever seen a case of a Henry Fonda persuading 11 jurors to come around to his point of view. Well, Your Honor, I think, you know, if the judge had just sent them back and said, listen, this is a six-week trial, you sent me three notes today after one day of deliberation, this is, you know, you need to deliberate more. Now go back in there and deliberate, and, you know, you should deliberate for at least another week. You know, it's like a week for a six-week trial is normal. Go in there, and I don't want to hear any more, you know, crying from you. Something along those lines, and just sent them in there. You would have had 11 jurors looking at that one juror saying, the judge is going to make us stay here for another week if you don't change your mind. We're not changing our mind. And that would have been a much worse situation than having a judge give a very articulate, explicit, detailed discussion of what the jurors should do. Now go back in there, but this is what I want you to do. I want you to consider role-playing. Consider this. Consider each other's point of views. Do all these things. The judge should not say, you know, go in there, and I'm really pissed, and, you know, get this done because you guys are trying to quit way too early, and then making everybody mad at that one juror. I think you can use better terms than that. I apologize, Your Honor. Well, you're just saying that it could have been worse. Well, I think when you're in a situation where you have a jury that's saying we give up after one day in a six-week trial, I mean, all the case law says the judge absolutely has the right to tell them to continue deliberating. So, you know, how do we do that? Here's what the judge said. Your goal is to reach a verdict regardless of how long it takes. It's your duty to deliberate with a goal of arriving at a verdict on the charge of you can do so without violence to your individual judgment. Those are your favor. In experiments with role-playing, you should do whatever is necessary in order to continue deliberations. I mean, that's kind of what we have here, right? Sure. But, I mean, I think in Petitioner's brief, he quotes that as meaning you should do whatever it takes. Here it just says he's giving examples. You can role-play. You can, you know, try to take each other's positions. You can argue with each other. You know, he's saying I don't know what you should do. Just go in there and try something. Try to get the ball rolling somehow to get some dialogue. I mean, the fact of the matter is that when you have 11-to-1, there is going to be some pressure on that holdout juror. The language of the jury note, the fact that the jury sent those notes, three notes, so quickly on the first day show that they were not having a very productive conversation. They are saying there's someone here who's made up his mind. He won't look at the evidence. He won't participate. And we don't know what to do. They're sending three notes in the same day. They come back the next day. They send another note. They say we don't know what to do. This guy will not participate. The judge has to step in and say you have a duty to participate. Everybody has to open up their minds. I mean, the difference is if you say we are hopelessly deadlocked, that communicates one thing. If you say, well, there's just one holdout juror, it gets to be sort of a very sensitive area that the judge has to take some care in. I assume you'd agree with that. And the judge relied on a published California case. So that was the best that the judge could find. When there is a jury that is deadlocked after such a short amount of time, I mean, the judge has to tell them something. I mean, he can give up, but it seems a bit like a waste to give up after one day of a six week trial. So the judge has to say something and just sending them back into the jury room and say, stick to it, keep at it. That can do more harm than good. Then an instruction that actually gives them direction and helps them and says both sides, both sides open up your mind. As far as I don't know, I think that's about it. That's all I have to say. If there are any questions. Thank you, counsel. Okay. Just to clarify one notion from the Lowenfeld opinion, what the court did find in that case is the judge's behavior and instruction to the jurors was appropriate because he didn't go quite to where Alan took us or where Moore takes us as far as his comments to the jurors. But the holding from Lowenfeld is instructive on this particular set of facts in this case because it tells us that we have to look at everything in its context. And I don't agree with the Attorney General's characterization that they had been deliberating for only a day. This was actually on the third day of deliberations. A part of that day was requesting readbacks, further information, which reflects careful thought on the part of the jury, seriousness of their role on the part of the jury. 17 notes is an indication that they were engaged, that they were thinking about this case. And based on these facts, based on this particular case, this was a coercive jury instruction as given by the court that deserves this case being sent back for a new trial. Alan is still the law, isn't it? Alan is still the law. It has been since 1896. It's been widely criticized, but it is still the law. The law of the Supreme Court, which we have to follow. Yes, Your Honor. And I think what the cases say to discuss, Alan, and I think what is the focal point is when is the appropriate time to give an Alan type of charge or the Moore instruction. And we have to look at the context of the circumstances under Lowenfeld before we can reach that point. So are you saying, do you believe that the Moore instruction is in conflict with the Supreme Court law, or are you just saying that the Moore instruction in this context should not be given? In this context, it should not be different. Obviously, we could go through an instruction of that length and find issue with the language with it where we do apply it to a factual scenario, I believe. But I think given the last note by the foreperson which says that this particular juror is wed to the statements of the prosecutor, and then if we look at some of the language within the Moore instruction that says you can't take the prosecutor's or the attorney's words as evidence, you have to look at the evidence, could only logically be pointed at that particular juror if that juror is actually listening to the instruction. I think the idea that the mob comes into the courtroom knowing who the lone holdout is, requests the judge's blessing with a long, lengthy instruction after giving an overly suggestive note to this court, and the court acquiescing and looking at that jury while not knowing who that particular individual is by sight or by name, they know who they're speaking to. And that's a problem. And that's the problem that we have in this case. The part that bothers me is, with your argument, is apparently he was basing his reticence on statement made by the prosecutor. The government, the court apparently had already given the instruction that you don't listen to the lawyers, just listen to the evidence. If that individual, the twelfth juror, is holding out for a reason inconsistent with the instructions he's already given, what should the court do? Shouldn't the court straighten the law out for the benefit of the court, for the benefit of the jury? I think the jury's comment in that regard was a little misplaced, because when we look at the testimony, we look at the facts and the witnesses. In this case, there was extreme credibility problems by the prosecutor's key witnesses, which was this. Well, that's a different question. My question is, if the juror who's a holdout is not following the instruction, don't pay attention to the lawyers, what should the judge do? I think that the juror was following the instructions of the court. I think at that point, the juror had evaluated all of the testimony of the different witnesses. And I think what happened during deliberations is that he made a comment that the prosecution had suggested, if you believe my witnesses, you must convict. And I think he was explaining to his fellow jurors, I don't believe these witnesses. That's the speculation that we don't know. But we do know the reason why it had to do, his argument had to do with the laying credibility on a prosecutor's statement, which you shouldn't do under the instructions. I agree. But I think the analysis that that jury, that juror, the lone holdout juror, arrived at was, I don't believe these witnesses. I can't convict someone based on witness testimony that is so conflicting, so overly biased. We don't know. That's all speculation. That may be speculation, Your Honor. But I don't think that one line by the juror in and of itself is everything. And the judge could have done what they did in Lowenfeld, which was give a more modified explanation to the jury or statement to the jury that didn't reach as far as Moore did. The judge could have simply said, I want to remind you that you're not to consider anything the attorneys may have said during this case as evidence in this case. You're reminded that's not the standard and could have given an instruction a lot less guided than Moore and coercive than Moore, considering the circumstances. Excuse me. I don't understand why the court would make that suggestion. Quite frankly, the judge knew that that colloquy with the court for five pages would put the pressure on that one individual to change his mind. It certainly wasn't directed at having one person change 11 persons' mind. Why would they role play? They already agreed with one another. So I don't understand why the court would make that suggestion. The only role playing would be to change the mind of the one lone holdout juror. Of course, we don't know, do we, that that instruction wasn't just a thing that that holdout juror needed to be explained for him to reconsider his position and listen to what the others were saying and change his mind if he became convinced that he was wrong. That's the purpose of the charge. You say we don't know that he wasn't coerced into it. We don't know that this wasn't just what he needed to make a change his mind. And again, we would be speculating on that point as well. And I think the real issue is looking at the conduct of the jury, the series of notes, the court's conduct, and then when the court became really stern and gave this Moore charge after they had learned of the count of the jury and there was no serious time between the giving of that instruction and deliberations continuing, obviously a lot less time than had happened prior to that instruction, we can look at the impact of that jury instruction and find that it was coercive because it obviously, in my estimation, caused that juror to cave, collapse, or join the group, and we simply can't have that. That's not constitutional. For that reason, it was a coercive jury instruction. Thank you, counsel. The case just heard will be submitted for decision. Thank you both for your arguments. And we'll take a ten-minute recess.
judges: Albritton, Wallace, Thomas